So we are now turning to the third case. It is case number 25-30514, Maya Detiege v. Katrina Jackson, and we're going to have Anna Cleveland for Maya Detiege and Dane Sherman. I'd like to reserve five minutes for rebuttal. Once a government official opens up a forum for discussion or engagement, it cannot then close that forum to those whose views are disfavored. For example, if a lawmaker holds a town hall and facilitates public comment, he can't kick out a speaker for expressing criticism. The same principle applies when this censorship occurs in the government's online forum. Whether we like it or not, social media is the new town hall and public square. As Linkey v. Freed affirmed, public officials, like Senator Jackson, are bound by the First Amendment when they use their social media accounts as communicative tools of their office. The Supreme Court decided Linkey after this case was filed, but the law is the same. While the medium of this dialogue between elected official and member of the public has changed, the constitutional principles have not. Linkey articulates a two-part test to determine when a government official's censorship on social media constitutes state action for the purposes of a 1983 claim. Here, the district court misinterpreted Linkey and erroneously applied its two-part test. It did so by failing to recognize the highly fact-specific nature of this inquiry and by disregarding the cited sources of custom, usage, and written law that give the senator actual authority to speak on behalf of the state. I'll address these arguments in turn. In determining the scope of an official's actual authority, importantly, Linkey does not require explicit authorization to speak on behalf of the state. Instead, a close look at the specific facts and circumstances of the official's job is necessary, and this makes sense. The court notes that there are more than 20 million state and local government employees across the nation, from governors to transportation workers, all with wildly varying different job descriptions. In analyzing the scope of actual authority, we look to the office held by the government official, the type of social media platform used, the appearance of the social media page, and the substance of the specific posts at issue. For example, here, both plaintiffs were blocked for criticizing legislation that the senator introduced. Now, Senator Jackson is a prominent and influential state senator. She is not a municipal manager like the defendant in Linkey, and this is significant because as a senator, she wields a considerable amount of state authority. Are you saying every senator is prominent or Senator Jackson is prominent? What are you saying? I'm saying that every senator is prominent, but I'm also saying that Senator Jackson is especially prominent because of the leadership positions that she's held on committees. So, prominent is one of the factors we look at, and that's just defined by virtue of being a senator? Well, the factors that we look at are dependent on the specific duties of the office. In her tenure, she has held leadership positions on multiple committees and has sponsored and co-sponsored significant legislation. So, instead of looking to whether her job... But if she hadn't held positions on different senate committees, wouldn't you still be bringing this lawsuit? Yes, Your Honor, we would. But instead of looking to whether her job requires her to make official announcements, like the city manager in Linkey, we should look to the scope of authority of a state senator to communicate with the citizens who are subject to the laws that she drafts, proposes, and sponsors. Here, the lower court interpreted the requirement that she be authorized to speak on behalf of the state to mean the entirety of state government instead of her office. But this is erroneous, because when Senator Jackson speaks for and on behalf of her office, she is plainly not speaking as a private citizen. She's speaking on behalf of the state through her office as the state senator for District 34. Communicating with the public... Tell me what you interpret on behalf of the state to mean. What does that mean to you? On behalf of her district, District 34. So, whenever she speaks, she's speaking on behalf of her district? When she is speaking about her legislative duties, and this is another prong of Linkey... Excuse me, not a prong of Linkey, but Linkey instructs us to look whether the speech that is being censored is part of the senator's bailiwick or portfolio of responsibilities. Here, it's clear that her legislation is part of her portfolio and part of her responsibilities. But who's paying for this particular social media? Is it government or her? Well, access to the social media is free. However, she is controlling the account, and she's using it as a communicative tool of her office. And she also has admitted during deposition that legislative aides that are paid by public tax dollars do generate graphics that she then tweets out to her followers on social media. And that equals speaking on behalf of the state? It equals speaking on behalf of her office. You can speak about the state, but to say someone's speaking on behalf of the state is to say something. Can I speak on behalf of the federal government? The entire federal government? No, Your Honor. Could I do that? No, Your Honor. And there have been cases where they have looked specifically at judges, and they have found that judges are not authorized to speak on behalf of the state, specifically because the duty of a senator is distinct because they represent us. They represent the people. Our state constitution charges them with being responsive to the people. Okay, but you know we've had federal government shutdowns because not everybody has agreed in Congress on X and Y, and that's true in states as well. Not everybody agrees on everything. So how can you say that somebody is saying, well, I want to do X, Y, Z, and the other way around? Your Honor, if you look at precedent, the Fifth Circuit and the Supreme Court have recognized legislative acts that an individual legislator takes that are part of their official, in their official capacity, that are not necessarily representing the entirety of the legislature. For example, in Williams v. United States, the Fifth Circuit explained that legislative duties are not confined to those directly mentioned by statute or constitution, and that it is a primary obligation of an elected member of a representative democracy to serve and respond to its constituents. So because informing the public is a primary obligation, it must follow that Senator Jackson has the authority to do so. When she is speaking in her official capacity on behalf of her office, that is imbued with state authority, even though she is not necessarily speaking on behalf of the legislature as a whole. The lower court also erred in disregarding appellant cited sources of custom and usage that give the Senator her actual authority to speak. As Linkey explains, the inquiry is whether prior public officials holding the same title and wielding the same authority have purported to speak on the state's behalf and have been recognized to have that authority for so long as to become well-served. The lower court also erred in disregarding appellant cited sources Here, the lower court instead substituted its own test, asking whether Louisiana legislators customarily use Twitter to speak on behalf of the state. But this was an error. Again, Linkey does not require an explicit authorization to speak on social media, only the authorization to speak on behalf of the state. Linkey also recognizes that for certain high-ranking government officials, such as Senator Jackson, the general grant of authority over a specific subject matter naturally encompasses the authority to speak on behalf of that subject. For example, her legislation. The district court also erred in dismissing appellant cited sources of written law that grant the Senator authority over legislative matters from our own state constitution. In just one paragraph, the court rejected this argument and erroneously held that Louisiana legislators don't have the authority to solicit input or make announcements on the state's behalf, but that's exactly what lawmakers are elected and paid by our tax dollars to do. Individual legislators are granted general legislative power, but the Louisiana constitution charges state legislators with the duty to serve and to be responsive to the people of Louisiana. Well, and the constitution says that they can propose debate and vote on laws. Tell me where you find in it is speaking on behalf of the state. It charges them with the duty to serve and to be responsive to the people of Louisiana, and that naturally encompasses the ability to speak to the people of Louisiana. Speaking to the people of Louisiana to me seems different from speaking on behalf of the state to the people of Louisiana. That's where I'm, I can't connect that up. Well, your honor, Linky V. Freed articulated a two-part test that is now going to apply to every public official across the nation, and because it is a specific test that is applying to so many different jobs, it demands flexibility in its application. It's clear that legislators act in their official capacity beyond when they are legislating, beyond when they are, beyond the scope of what would be covered by legislative immunity, and there is a lot of case law, Hutchinson v. Proxmire from the Supreme Court, Dose v. Holland from the Sixth Circuit, recognizing that legislators act in their official capacity when they submit press releases or when they give interviews, and because they're acting in their official capacity, they are doing that pursuant to state law, pursuant to the state, even though they are not speaking on behalf of the state itself. We elect leaders like Senator Jackson to represent us, and we entrust them to draft legislation that is in the interest of ourselves and of our neighbors. To say that communicating with the public about her own legislation is not part of her job, it's unworkable. But I thought your client was not in her arena that could elect, could vote for her or vote against her. That's true. Neither of our clients are her constituents. However, she still has a duty to inform the public, and both Ms. Stetige and Mr. Sherman are residents of the state of Louisiana and are affected... Well, but Sherman's not out anymore, so why is Sherman even here? Your Honor, Mr. Sherman is here because he has standing to seek prospective relief. He has an intent to engage in the course of conduct, arguably affected with a constitutional interest. His intended future conduct is arguably prescribed by that interest, and the threat of future enforcement is substantial. And because this is a First Amendment case, the likelihood of future injury is met due to the chilling effect on plaintiff's speech. Further, Sherman's standing in this case is even more clear because he's already been blocked by the Senator once and is likely to be blocked by her again. The district court's misapplication of the Linkey test and its erroneous judgment has serious implications, including a grant of widespread immunity to legislators for constitutional violations committed on social media. It functionally insulates censorship, and it allows legislators to silence dissent with no recourse. It is also nonsensical. If the legislator who drafted and championed the bill is not authorized to speak on it, then who is? This grant of blanket immunity creates an insurmountable burden for plaintiffs, and it warps debate in these significant public forums. This outcome is undemocratic, and it cannot be what the court intended in Linkey. As such, we ask that this court overturn the district court's decision. Okay, thank you. We appreciate it, and you'll have a rebuttal, and now we will hear from Caitlin Hudiman for Senator Jackson. Yes, thank you, Your Honor. Good morning, and may it please the court, Caitlin Hudiman on behalf of Senator Jackson. This court should affirm the district court on any number of independent bases, from jurisdictional immunity doctrines to black letter application of the Supreme Court's decision in Linkey v. Freed. Simply put, Senator Jackson's decision to block these plaintiffs from her Twitter does not violate the First Amendment, but more fundamentally, cannot support a claim under Section 1983 because Senator Jackson lacked the authority to speak on behalf of the state when she did so. Because that was the focus of much of your questions, I'll jump right into Linkey and step one specifically. The Supreme Court in Linkey noted that at times, the line between private conduct and state action can be difficult to draw, and that question is especially difficult in a case involving a state official who routinely interacts with the public like Senator Jackson does. Because such officials may look like they are always on the clock, it's tempting to characterize every encounter as part of their job, but the Supreme Court said that such broad-brush assumptions are improper. While public officials can act on behalf of the state, they are also private citizens with their own constitutional rights. The Linkey test is easily applied here, and the district court got it completely correct because no state action exists where Senator Jackson had no actual authority to speak on behalf of the state. The Linkey court clarified that actual authority here harkens back to the potential sources in Section 1983. Statute, ordinance, regulation, custom, or usage. An act is not attributable to the state unless it is traceable to the state's power or authority. So first, the written law options. Statute, ordinance, law, regulation. Here, plaintiffs propose two different buckets, sort of, of written law that might satisfy the actual authority from. The first is examples of written law like constitutional provisions, statutes, or senate rules. But let's look at each of those in turn. Article 3, Section 1B of the Louisiana Constitution says that the legislature acts as a body, not as individuals. So that does not support the individual authority for a state senator to speak on the state's behalf. They then cite Louisiana Revised Statute 12231, which is just a quorum statute. Likewise, Senate Rule 5.3 is just a quorum rule. They then turn to committee rules like Senate Rule 13.1, 13.8, and 10.11. But if anything, what the quorum and committee rules demonstrate is that an individual senator does not have the authority to act alone. They act as a part of that continuous body. And I think this draws back to your conversation, Judge Graves, with my friend on the other side when she claimed that every senator is prominent and that each senator has this special authority to speak on the state's behalf. But if every senator is prominent, then no senator is prominent. And what the issue is here is that plaintiffs have narrowed the inquiry too much. They're focusing on a legislator's ability to act on behalf of their legislative office. But that's the wrong inquiry, and the district court was to fault plaintiffs for that. The nature of this senator's office, like any senator's office, is tied to her participation in that continuous body. Again, she cannot act alone. So to speak on behalf of the state does not mean to speak on her own behalf. It means to speak on behalf of the legislature as a whole. The only other bucket that plaintiffs propose for potential written law is the general concept that Louisiana is a representative democracy. But that likewise says absolutely nothing about granting individual legislators the ability to speak on the state's behalf. So without any written law that directly provides the authority to speak, again, on the state's behalf, not on her own behalf, plaintiffs fail that aspect of the sources given in Section 1983. And I'll note that their citation to Williams v. United States on this prong was an opposite. There, that was an opinion that predated Linkey by almost 30 years, and it didn't address Section 1983 at all. It had to do with the Westfall Act. So it doesn't apply here and certainly doesn't change the outcome that Linkey dictates. The only other way plaintiffs can show actual authority is through custom or usage. First, they provided no evidence of that in the record. Remember that this was decided on summary judgment, so plaintiffs had to come forward with actual evidence in the record supporting their claims, and they did not do so. Here, plaintiffs would have had to show that, for example, prior state senators have purported to speak on the state's behalf and have been recognized to have that authority for so long that their power to do so has become permanent and well settled. That comes straight from Linkey. As the District Court pointed out, the only thing plaintiffs came forward here on this prong, came forward with on this prong on page 14 to 15 of his opinion is an article simply describing the fact that Louisiana senators and House reps do have social media accounts, but for all the reasons the District Court rejected that argument, I encourage your honors to reject that here. I think the fact that the Louisiana Senate and House each have their own Twitter accounts, which speak for those bodies in which individual members are not permitted to operate, reinforced that there is no custom establishing that a senator may speak for the legislature itself. Plaintiffs also seem to say, and they imply today, that your honors can jump straight to the First Amendment inquiry because that's the basis of their claim, but if that was ever proper before Linkey, it's certainly not proper now. So without any written law or customer usage establishing actual authority to speak on behalf of the state, plaintiffs fail Linkey step one, the District Court engaged in a thorough and accurate analysis, and that provides the most straightforward and easy basis for your honors to affirm the District Court. I'm happy to go into step two. I didn't hear much discussion about step two, so I can rest on my briefing there. The short story there is that Senator Jackson was not purporting to exercise any state authority when she did block these people on Twitter. Plaintiffs at most claimed that Senator Jackson's was mixed use, and so what that would require from plaintiffs is a post-by-post analysis, a very fact-specific inquiry about which posts they wanted to comment on but weren't able to because they were blocked, and whether those specific posts actually demonstrated that Senator Jackson was exercising her state authority, and they simply didn't do so. I'll also decline to go into the First Amendment merits and just rest on our briefing there. The District Court didn't go into that, but we provided as an alternate basis to affirm because, again, plaintiffs just didn't do the work on the summary judgment record to establish a First Amendment violation. We also provided five distinct jurisdictional bases for your honors to affirm. The only one that I heard my friends on the other side talk about was Plaintiff Dane Sherman's standing in the statute of limitations. Again, we explain in our briefing why Plaintiff Sherman forfeited his alleged injuries for standing, both injunctive and monetary. That's contained in his deposition transcripts, which we cite at length in our briefing. Likewise, both Plaintiff Detege and Plaintiff Sherman, their claims fail on three different immunity doctrines, qualified immunity, sovereign immunity, and legislative immunity, but unless your honors have questions, I won't belabor the point. Each of those requires affirmance of the District Court's correct dismissal of plaintiff's claims, and I'm happy to give your honors time back unless you have any questions. Do you have a question? Okay, thank you. We appreciate your argument. We'll now hear from the rebuttal. Your honor, your honors, I'll start with addressing the point that Senator Jackson did not purport to use actual authority on social media. This is belied by reams of tweets provided by plaintiffs in the motion for summary judgment. She tweeted to solicit input on bills as she was walking into committees. She tweeted to arrange meetings with interest groups. She often tweeted out graphics that said from the desk of Senator Jackson. She tweeted to debate with members of the public about the legislation that she would then go on to draft and to support through committee. This is evidenced by her very first tweet. In March of 2012, shortly after she was elected, she tweeted from the account at Rep. Kay Jackson, legislative session starts tomorrow. My office will keep you updated. And then she went on to live tweet that legislative session. She clearly intended to use her Twitter as a tool of her office to solicit feedback from the public and to engage in debate with members of the public. I also want to note that just because cited sources of law predate Linkey, that does not disqualify them from being considered part of this inquiry. Linkey was premised on existing law. The opinion came about to resolve a circuit split to ascertain when public officials are speaking in their official capacity on social media. Linkey did not reinvent the wheel and it certainly did not, didn't change the core inquiry here about when someone is speaking in their capacity. It simply articulated a new test. And finally, I'll briefly address the immunity arguments. She's not entitled to qualified immunity because there was already a Fifth Circuit case on point and that's Robinson v. Hunt. It gave defendant fair warning that the clearly established and prohibition on viewpoint discrimination also applied to the designated or limited public forum of a government official's interactive portion of a social media page. Further, she is not entitled to legislative immunity because communicating with the public on Twitter is not a legislative act. It is ministerial or administrative. And finally, she's not entitled to 11th Amendment immunity because of the ex parte Young exception. Here, plaintiffs brought against a state officer acting in her official capacity. They are seeking prospective relief to redress ongoing conduct and they allege a violation of federal and not state law. For those reasons, the ex parte Young exception applies. Finally, the Supreme Court has continuously held and emphasized that speech on the Internet is entitled to First Amendment protections. Reading into Linkey a limiting principle involving collective action for a single member of a multi-member body is contrary to this precedent. Thank you. We appreciate both sides' arguments and we will decide this case. And we are now done with our oral arguments for today, this panel. We will be back tomorrow at 9 a.m. for some more oral arguments. Thank you. Thank you.